**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| TY J. JACOT and S.E.T. PACIFIC, INC., | CIVIL CASE NO. 16-00074 |
| Plaintiffs, | |
| vs. | **ORDER RE: DEFENDANTS' MOTION TO DISMISS** |
| JAY D. MILLER, RITA S. MILLER, INDIVIDUALLY AND AS TRUSTEES OF THE JAY AND RITA MILLER TRUST, and JOHN DOES I-III, | |
| Defendants. | |

Plaintiffs initiated this case in the Superior Court of Guam, advancing claims of conversion, fraud, and constructive trust, based on activity associated with a Guam real estate venture involving Plaintiffs and Defendants. *See* ECF No. 1 at 9. Defendants timely removed the case to federal court, invoking its diversity jurisdiction, noting Plaintiffs are residents of Guam, the named Defendants are residents of Nevada, and the amount in controversy satisfies the jurisdictional minimum. *Id*. at 2–3. Defendants have moved, pre-answer, to dismiss Plaintiffs' complaint for failure to state a claim. *See* ECF No. 8. The parties have noted they have no objection to submitting the matter for consideration without argument. *See* ECF No. 61. The court has now considered the motion, the supporting and opposing submissions, and the

relevant authority.   The court **DENIES** Defendants' motion to dismiss Plaintiffs' complaint (ECF No. 8).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Plaintiff Ty Jacot ("Jacot") and Defendants Jay and Rita Miller ("the Millers") were business partners of sorts, as shareholders in Plaintiff company S.E.T. Pacific, Inc. ("SET").  ECF No. 1, First Amended Complaint ("FAC") ¶¶ 6-7.  In June 2005, Jacot and the Millers agreed SET would purchase a luxury condominium on Guam as an investment, with the hope that the property would appreciate in value and could be sold at a profit.  *Id.* ¶¶ 7-8.  By agreement, SET was to be the purchaser of the condominium, and funds from SET were to be used for the purchase.  *Id.* ¶ 9.  And upon any later sale, Jacot and the Millers agreed, each of the three would receive 33 1/3 % of the proceeds of the sale.[1]  *Id.* ¶ 12.

For several years after the purchase, the Millers lived in the condominium, while SET funds were used to pay for expenses associated with the property, including common fees and renovation costs.  *Id.* ¶¶ 10-11.  In or around 2010, the Millers advised Jacot that they would like to transfer ownership of the condominium to a "Jay and Rita Miller Trust," ("the Trust") for the purpose of avoiding becoming ensnared in certain lawsuits.  *Id.* ¶ 13.  The Millers assured Jacot that upon transfer, they would hold the condominium as trustees for all involved.  *Id.* ¶ 16. Based on that representation, Jacot, and SET, agreed to and executed a transfer of the condominium to the Trust.  *Id.* ¶¶ 17-18.

---

[1] The court notes the complaint makes reference only to "the parties" in various paragraphs.  But given the discussion of Jacot and the Millers as the relevant actors and the frequent use of "the parties" quickly trailing discussion of Jacot and the Millers, the court concludes the most plausible inference to be drawn from the structure is that "the parties" is most often used as a shorthand for the three—Jacot and the Millers—collectively.  *See, e.g., Allen v. Cty. of Lake*, 71 F. Supp. 3d 1044, 1055 (N.D. Cal. 2014) (dismissing argument as inconsistent with "the most reasonable interpretation of the Complaint"); *accord Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (highlighting question of whether "there [is] a reasonable interpretation" under which remediable claim is stated).  The court is aware that certain instances of "the parties" may also include SET in the collective.  *See, e.g.,* ECF No. 1, FAC ¶ 16.

1    In or around 2016, Jacot discovered the Millers had sold the condominium, for the sum of

2    approximately $1,600,000. *Id.* ¶ 21. The Millers had made the sale without the consent or

3    knowledge of Jacot or SET, despite previous assurances Jacot and SET would have a say in any

4    sale. *Id.* ¶¶ 20-21. Shortly after the sale, the Millers left Guam with the entire proceeds of the

5    sale and they have not returned; neither Jacot nor SET have since received any portion of the

6    proceeds. *Id.* ¶¶ 22, 42.

7        Upon discovering the apparent ruse, Jacot brought claims of conversion, fraud, and

8    constructive trust in the Superior Court of Guam and the Millers, as noted, removed the case to

9    federal court. ECF No. 1 at 1, 9. The Millers then moved to dismiss for failure to state a claim,

10   contending Guam's Statute of Frauds precludes relief on any of Jacot's claims. ECF Nos. 8, 9.

11   **II.  LEGAL STANDARD**

12       Rule 12 of the Federal Rules of Civil Procedure allows dismissal of a complaint for

13   failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The

14   purpose of the Rule 12(b)(6) motion, the Ninth Circuit has explained, is to test the complaint's

15   legal sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

16   Generally, the plaintiff's burden at this stage is light—Rule 8(a) directs only that a complaint

17   "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to

18   relief." Fed. R. Civ. P. 8(a).

19       In ruling on Rule 12(b)(6) motions, the court is to "take all allegations of material fact as

20   true and construe them in the light most favorable to the nonmoving party." *Parks Sch. of Bus. v.*

21   *Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). The court may dismiss based on lack of

22   cognizable legal theory or on the absence of facts that would support a cognizable theory.

23   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). And while the plaintiff's

24   burden is light, it is not nonexistent—the complaint must "contain either direct or inferential

allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (internal quotation marks omitted). "Formulaic recitation" of the elements of any given cause of action will not suffice; instead, the complaint must allow for the conclusion that a claim is "plausible on its face," and it must establish a factual foundation that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. *Statute of Frauds Defense*.

Defendants advance a straightforward argument in support of dismissal: they contend each of the claims here requires that Plaintiffs establish some interest in the condominium, but because Guam's Statute of Frauds requires written agreements for most transfers of an interest in real property and because the complaint has alleged only unwritten agreements associated with the transfer of the condominium, Plaintiffs cannot establish that interest. ECF No. 9 at 3-5. Thus, they maintain, the claims must fail. *Id*. at 5.

The court acknowledges that Guam's Statute of Frauds provides that "[a]n agreement . . . for the sale of real property, or of an interest therein" is "invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged." 18 G.C.A. § 86106(5). As Plaintiffs correctly point out, however, an extensive body of case law makes clear that joint ventures and partnerships may be established by oral agreement, and joint ventures and partnerships regarding the purchase and sale of real property need not, typically, satisfy a statute of frauds. *See, e.g., Anderson v. Prop. Developers, Inc.*, 555 F.2d 648, 654 (8th Cir. 1977); *Meyer v. Christie*, 634 F.3d 1152, 1160 (10th Cir. 2011); *In re Yan*, 381 B.R. 747, 753 (N.D. Cal. 2007); *see generally* Richard A. Lord, 9 Williston on Contracts § 25:17 at 601–03 (West 1999).

Cases exploring these fact patterns justify the conclusion on various grounds. Some have

explained the agreements need not satisfy statutes of frauds because the real subject matter is not

title to real property; rather, the subject matter is the proceeds or profits from sale. *See Kaljian v.*

*Menezes*, 36 Cal. App. 4th 573, 583–84 (Cal. Ct. App. 1995) (collecting cases). Others have

reasoned the existence of a partnership or joint venture between parties puts them in a

confidential relationship, and by violating a fiduciary duty arising from that relationship, an

offending party may establish himself as constructive trustee for the benefit of the others. *See id.*

Still others have noted the partnership or joint venture may never have contemplated a transfer of

title from one party to another—the partner may merely have an interest in an accounting, and

eventually, some portion of the entity's assets. *See id.*

Although Plaintiffs rely largely on the first justification for avoiding the statute of frauds

here, each may have application, depending on what the facts reveal about the specifics of the

agreement. *See id.* But before any might have application, the court notes the complaint must

set forth enough factual matter so as to allow for the conclusion that a partnership or joint

venture was actually established. That is because although Plaintiffs have not advanced a breach

of partnership or joint venture claim, Defendants rightly note the claims advanced require that

Plaintiffs establish some interest that might have been violated by conversion or fraud, and that

interest, Plaintiffs maintain, arose by way of entering an oral venture agreement. *See* ECF No.

14 at 6-7.

Typically, the question of whether a partnership or joint venture has been formed is one

of fact, for resolution by the jury. *See Kaljian*, 36 Cal. App. 4th at 586. In a complaint, a

claimant aiming to rely on the existence of one of these agreements will typically satisfy Rule 8

pleading requirements by alleging an "agreement between the parties under which they have a

community of interest, that is, a joint interest, in a common business undertaking." *Id.*; *see also*

*Second Measure, Inc. v. Kim,* 143 F.Supp.3d 961, 971 (N.D. Cal. 2015). And critically, the

claimant must also allege an agreement to participate in managing the venture. *Id*. The claimant need not allege further formalities, however, such as the sharing of profits or losses, because the question of existence of the partnership is typically a fact-intensive question, to be resolved by examining "the intent of the parties revealed in the terms of their agreement, conduct, and the surrounding circumstances." *See Kim*, 143 F. Supp. 3d at 971 (quoting *Holmes v. Lerner*, 74 Cal. App. 4th 442, 454 (1999)).

Applying those requirements here, the court notes Plaintiffs have alleged an agreement with Defendants, to purchase a condominium as an investment. ECF No. 1, FAC ¶ 7. That allegation satisfies the "agreement" and "common business undertaking" pleading requirements. *See Kim*, 143 F.Supp.3d at 972. Plaintiffs add that SET was the agreed purchaser, that any sale was contingent on each party's agreement, and that each party would receive a share of the returns. *Id*. ¶ 8. More specifically, they note, each party was to receive a specific percentage of the proceeds from the sale. *Id*. ¶ 12. And they add that after the condominium was purchased, the Millers resided in it while SET paid fees and renovation expenses associated with the property. *Id*. ¶ 11. Taken together, those allegations satisfy the joint management pleading requirement. *See e.g., Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.,* 965 F.Supp.2d 1141, 1150 (E.D. Cal. 2013) (finding allegations "sufficient to plead the existence of a partnership" under California law where plaintiff alleged parties had orally agreed to conduct business together, share profits, provide operating capital, and assume some control over the business); *accord Kim*, 143 F. Supp. 3d at 972 (finding venture adequately pled based on allegations of "express oral agreement and subsequent collaboration"). Plaintiffs, in other words, have satisfied their very preliminary burden—they have adequately pled an underlying interest that may have given risen to a conversion or fraud claim, and they have adequately pled the possibility of a kind of agreement which falls outside the purview of the statute of frauds. *See*,

*e.g.*, *Sewing v. Bowman*, 371 S.W.3d 321, 330 (Tex. App. 2012) ("[A]n agreement to share in the profits of contemplated speculative deals in real estate simply does not involve the transfer of real estate, or an interest in real estate, within the meaning of the Statute of Frauds." (quoting *Berne v. Keith*, 361 S.W.2d 592, 597 (Tex. Civ. App. 1962)).

     *B. The Conversion Claim.*

     Beyond the contention that Plaintiffs failed to adequately plead an interest that might give rise to a conversion claim, Defendants maintain, as a conclusion, that Plaintiffs have failed to "allege facts sufficient to sustain a claim for conversion." ECF No. 9, at 6.

     Conversion is a tort claim, generally described as "the wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 354 P.3d 334, 344 (Cal. Ct. App. 2015). A plaintiff must generally establish three elements to prevail on the claim: (1) ownership or a right to possession of property; (2) the defendant's conversion by wrongful act or disposition of property rights; and (3) damages. *Id.*; *see also Marianas Hosp. Corp. v. Premier Bus. Sols., Inc.,* No. CIV 07-00002, 2009 WL 750247, *10 (D. Guam Jan. 14, 2009). Typically, the court notes, conversion may be committed only with respect to personal property, and not with respect to real property. *See, e.g., Munger v. Moore,* 11 Cal. App. 3d 1, 7 (Cal. Ct. App. 1970). But courts generally permit recovery for conversion of various non-physical assets "reflected in such documents as accounts showing amounts owed, life insurance policies, and other evidentiary documents." *See, e.g., Welco Electronics, Inc. v. Mora,* 223 Cal. App. 4th 202, 209 (Cal. Ct. App. 2014) (internal quotation and citation omitted). And thus, in cases featuring ventures involving real property, the courts have generally explained that the "real property acquired and dealt with" will take on the character of personal property, and more importantly, that the conversion claim in these scenarios is not one for conversion of the real property itself, but for "the proceeds of the sale of properties"—much as in scenarios featuring statute of frauds

7

defenses. *See, e.g., Asdourian v. Konstantin*, 93 F. Supp. 2d 296, 299 (E.D.N.Y. 2000); *see also Gherman v. Colburn,* 140 Cal. Rptr. 330, 346 (Cal. Ct. App. 1977) ("When defendants repudiated the existence of a joint venture, denied that plaintiffs had any equitable right or title in the 2,600 acre parcel and claimed the entire parcel for defendants' exclusive benefit, defendants converted plaintiffs' equitable title in real property to personal property in the form of a right to a money judgment for damages and when defendants denied and repudiated their obligation to pay those damages, they, in effect, converted plaintiffs' personal property to their own use and benefit."); *accord Frankie J. Congram v. Raymond Giella Congram Realty Corp*., 1992 WL 349845, *6 n.4 (S.D.N.Y. Nov. 10, 1992) (distinguishing between claim for conversion of real property and claim for proceeds from sale of real property); *Wooten v. Marshall*, 153 F. Supp. 759, 763 (S.D.N.Y. 1957).

Application of these conversion principles and pleading requirements here is straightforward. Plaintiffs have pled that they had an initial interest in proceeds from the sale of the condominium, based on the oral agreement formed in contemplation of the purchase. *See* ECF No. 1, FAC ¶¶ 7-12. They add that Defendants have converted Plaintiffs' share of the proceeds to some other use—the condominium was sold, and Plaintiffs have received none of the proceeds. *Id*. ¶¶ 21-23. Finally, Plaintiffs allege, they have been damaged. *Id*. ¶¶ 12, 21-23. Those allegations, the court concludes, are sufficient to make out the conversion claim; in other words, they have established a factual foundation sufficient to allow the court to draw a reasonable inference Defendants may be liable for conversion. *See Marianas Hosp. Corp.*, 2009 WL 750247, at *10 (finding plaintiff adequately pled claim for conversion where it "pled that it remitted to Defendants monies to be held in trust for the payment of Plaintiff's payroll taxes, and that Defendants used those monies for something other than their intended purpose"); *see also Lee v. Hanley,* 354 P.3d 334, 344 (Cal. Ct. App. 2015) ("Lee's complaint may be construed to

1  allege that Hanley is liable for conversion for simply refusing to return an identifiable sum of

2  Lee's money.").

3      *C. The Fraud Claim.*

4      With respect to dismissal of the fraud claim, Defendants again rely largely on the statute

5  of frauds defense, and they add that Plaintiffs cannot establish reliance or damages based on the

6  allegations made.  *See* ECF No. 9, at 12.

7      While Rule 8(a)(2) requires for pleading purposes only that a plaintiff provide "a short

8  and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b)

9  establishes a slightly weightier burden for purposes of fraud claims.  *See, e.g., Bly-Magee v.*

10  *California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  Fraud claims must be pled with enough

11  specificity so as to "give defendants notice of the particular misconduct . . . so that they can

12  defend against the charge and not just deny that they have done anything wrong."  *Id*.  To make

13  out a claim of fraud under Guam law, a plaintiff must establish: (1) a misrepresentation; (2)

14  knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance;

15  and (5) resulting damages.  *Ukau v. Wang*, 2016 Guam 26, ¶ 36 (Guam Aug. 31, 2016).  But as

16  both the Guam Supreme Court and the federal courts have often explained, a plaintiff need not

17  prove the claim at the pleading stage; instead, to satisfy Rule 9's requirements, the plaintiff's

18  complaint must set forth allegations sufficient to give the defendant notice as to "the who, what,

19  when, where, and how of the misconduct charged."  *See Vess v. Ciba-Geigy Corp. U.S.A.,* 317

20  F.3d 1097, 1106 (9th Cir. 2003); *Ukau*, 2016 Guam at ¶ 47.

21      Plaintiffs' complaint does an adequate job of providing that notice here.  The Millers, the

22  complaint alleges, represented that they would hold the condominium as trustees for the benefit

23  of all parties upon transfer to the Trust. ECF No. 1, FAC ¶ 27.  The Millers also represented, at

24  that point, that they would not sell the property without the consent of Plaintiffs.  *Id*.  Moreover,

9

Plaintiffs allege, the Millers knew those representations were false at the time, and they were made with the intent to induce Plaintiffs to agree to the transfer. *Id*. ¶¶ 30-31. And based on the representations, Plaintiffs did agree, and the transfer was executed. *Id*. ¶¶ 17, 29. The property has since been sold, Plaintiffs allege, and they have not received any proceeds; they have been damaged as a result. *Id*. ¶¶ 21, 37. The complaint, in other words, has set forth alleged transferor and transferee, specific property allegedly fraudulently transferred, and the approximate time when the alleged misrepresentations and transfer were made. That kind of factual foundation, the Guam Supreme Court has concluded, is sufficient to make out a claim of fraud under Guam law—it establishes "the who, what, when, where, and how" of the misconduct alleged. *See Ukau,* 2016 Guam at ¶ 47 ("Ukau's Complaint alleges facts that when taken as true establish the particular transferor and transferees, the transfer of particular real properties, the dates upon which the properties were transferred, and the means by which the transfers were agreed upon and executed."). Those allegations, the court concludes, have established a factual foundation sufficient to allow the court to draw a reasonable inference Defendants may be liable for fraud.

*D. The Constructive Trust Claim.*

The court notes the concept of constructive trust is typically understood as one of equitable remedy—it "does not stand on its own as a substantive claim." *Evergreen W. Bus. Ctr., LLC v. Emmert*, 323 P.3d 250, 255 (Or. 2014); *see, e.g., Lund v. Albrecht,* 936 F.2d 459, 464 (9th Cir. 1991) ("[A] constructive trust is a remedial device, not a substantive claim on which to base recovery."); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 398 (Cal. Ct. App. 2007) ("A constructive trust, however, is an equitable remedy, not a substantive claim for relief."). Regardless, the court also recognizes as a practical matter that constructive trust is often pled as a distinct claim, for various

10

reasons.  *See, e.g., Microsoft Corp. v. Suncrest Enter.*, No. 03–5424, 2006 WL 1329881, at \*8 (N.D. Cal. May 16, 2006) ("[C]onstructive trust commonly is pleaded as a separate claim."). Recognizing the practice, the courts have recognized that whether the claim survives a motion to dismiss will generally turn on whether the other, substantive claims for which constructive trust may offer a remedy have survived—and, as the court has explained, the conversion and fraud claims have overcome the preliminary hurdle here.  *See, e.g., Deutsche Bank Nat. Tr. Co. v. F.D.I.C.,* 784 F. Supp. 2d 1142, 1163 (C.D. Cal.), on reconsideration in part, 784 F. Supp. 2d. 1142, 1163 (C.D. Cal. 2011) ("Because Deutsche Bank's substantive claim for breach of contract survives the FDIC–R's motion to dismiss, the Court will not dismiss the claim for constructive trust as a remedy for the breach of contract claim.").

In other words, because Plaintiffs have adequately pled their other claims here, and because constructive trust may offer a remedy for their conversion and fraud claims, the court declines to dismiss the constructive trust claim.  *See Lund*, 936 F.2d at 464 ("A constructive trust is an available remedy for constructive fraud and breach of fiduciary duty."); *Weiss v. Marcus*, 124 Cal. Rptr. 297, 304 (Cal. Ct. App. 1975) ("[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled."); *accord Deutsche Bank Nat. Tr. Co.*, 854 F. Supp. 2d at 1163.

## IV. CONCLUSION

The court therefore **DENIES** Defendants' motion to dismiss Plaintiffs' complaint (ECF No. 8).

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
     **Chief Judge**
**Dated: Sep 28, 2017**